TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00538-CR






Luis Noguez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0980505, HONORABLE TOM BLACKWELL, JUDGE PRESIDING







 A jury found Luis Noguez guilty of murder. See Tex. Penal Code Ann. § 19.02
(West 1994). The trial court assessed punishment of imprisonment for life. Noguez disputes the
conviction, arguing the evidence is factually and legally insufficient to prove: (1) that he
intentionally and knowingly caused the death of Diana Coronado; and (2) that he used a deadly
weapon during the commission of the offense or in immediate flight. Noguez also disputes his
sentence of life imprisonment. He claims the trial court erred in not considering the full range
of punishment for murder. We will affirm the trial court's judgment of conviction and sentence
of life imprisonment.


BACKGROUND

 Diana Coronado was found stabbed to death in her apartment on December 18,
1997. Prior to her death, she was involved in a tumultuous relationship with the appellant Luis
Noguez. Noguez and Coronado lived together for approximately five months until November
1997. After their breakup, Coronado found a new roommate Wyndi Moreland and began dating
Ian Aguirre. Moreland, Aguirre, Coronado's mother, and a co-worker of Coronado's all testified
that Noguez and Coronado often argued during their relationship.

 Noguez's boss testified that when Coronado and Noguez ended their relationship,
Noguez stopped working regularly and became unreliable. On the day of the murder, Noguez left
his job in the afternoon and bought a new set of clothes to go to a Christmas party; however, he
never arrived at the party. Noguez admits that on that night he had sexual relations with
Coronado, after which they argued over $500 he claimed she owed him.

 At 10:45 that night, Aguirre went to Coronado's apartment to meet her, but 
Coronado did not answer the door. Aguirre tried calling her from a nearby gas station, but she
did not answer the phone. Concerned, Aguirre called the police. When the police suggested
calling Coronado's roommate, Aguirre returned to the apartment and found the door unlocked. 
He discovered Coronado on her bed under a sheet with blood on her chest.

 Officer Ernest Pedraza investigated the crime scene and found that nothing was
stolen or ransacked. He concluded Coronado knew her killer. Officer Pedraza investigated 
Aguirre and eliminated him as a suspect. Noguez admits he was furious with Coronado, but he
claims he was only at her apartment from approximately 6:00 to 7:30 p.m. However, Aguirre
testified that he was on the phone with Coronado at 7:30 that evening.

 The day after the murder, Doctor Robert Bayardo performed an autopsy of
Coronado and estimated the time of death at 9:30 p.m. December 18. Dr. Bayardo testified that
four stab wounds to the chest caused her death. He also found several wounds on Coronado's
hands and forearms and bruises on her head and legs which he described as defensive wounds. 
He did not find any injuries indicating sexual assault; however, Dr. Bayardo testified that this type
of examination does not necessarily reveal such injuries.

 Two days after the murder, police found Noguez's car. Noguez had always taken 
meticulous care of his car and rarely lent it to others. The car was abandoned and appeared to
have been recently cleaned. Noguez's friend Frank Tubb testified that Noguez told him that he
got drunk, crashed his car, and abandoned it after seeing Coronado for the last time. Officer Pena
found a small blood smear on Noguez's steering wheel. Jody Williams of the Department of
Public Safety analyzed the blood smear and concluded that Coronado could not be excluded from
consideration as the person whose DNA was found in that smear. Williams was able to exclude
both Aguirre and Noguez as sources of the blood.

 Noguez never returned to work, never picked up his last paycheck, and went on
a month-long drinking binge. He turned himself in to the police on January 22, 1998. The jury
found Noguez guilty of murder with a deadly weapon, and the trial court assessed a life sentence
in the Institutional Division of the Texas Department of Corrections. Noguez filed a notice of
appeal complaining of legal and factual insufficiency in issues one and two and the trial court's
failure to consider the full range of punishment for the offense in issue three. 

DISCUSSION


 The issues Noguez identified on appeal do not match the arguments he actually
makes. Noguez's first issue states that the evidence was legally and factually insufficient to
support the jury's verdict that he intentionally or knowingly caused the death of Coronado. 
Instead, the argument he advances actually disputes the sufficiency of the evidence relating to the
killer's identity, not the killer's mental state. Noguez's second issue claims the evidence is legally
and factually insufficient to show he used a deadly weapon. However, he concedes that his only
complaint regards the sufficiency of the evidence identifying the killer. The first and second
issues thus collapse into one complaint that identity was not sufficiently proven because the State
used circumstantial evidence.

 Since the substance of these first two issues is the same, we will address them
together using the established and distinct standards for legal and factual sufficiency. We will
then consider the claim that the trial court failed to consider the full range of punishment when
sentencing Noguez.


Legal and Factual Sufficiency

 In evaluating the legal sufficiency of the evidence to support a criminal conviction,
we view all of the evidence in the light most favorable to the verdict and decide if any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 
See Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App.
1991). The standard of review is the same for direct and circumstantial evidence. See Geesa, 820
S.W.2d at 158-162. Therefore, Noguez's claim that the evidence is circumstantial does not affect
our analysis. 

 First, we address whether there is legally sufficient evidence to support two
findings: (1) that Noguez was the person who killed Coronado; and (2) that he did so with a
deadly weapon.

 The jury was presented with sufficient evidence that Noguez was the killer. Four
witnesses testified that Noguez and Coronado argued often during their romance. The relationship
had ended recently and abruptly. Noguez's boss Mason testified that Noguez became increasingly
unreliable in November and seemed despondent when Mason tried to counsel him. Coronado's
mother testified that Coronado told her that Noguez was following her. Noguez admitted that he
was in Coronado's apartment on the night of the murder and had sex with her. He admitted that
he was upset with Coronado because of some money he felt she owed him. Noguez also admitted
in a videotaped interview with Officer Pedraza that he pushed Coronado and that he was so
furious that he was out of his mind.

 The autopsy revealed fresh bruises and defensive wounds on Coronado's body. 
Noguez's car contained a smear of blood on the steering wheel that could not have been Aguirre's
or Noguez's, but could have been Coronado's. Officer Pedraza testified that he believed
Coronado knew her killer. From this uncontested testimony, the jury could have concluded that
the blood found in Noguez's car was Coronado's. The facts show Noguez had both the
opportunity and a motive to kill Coronado. His own testimony placed him at the scene within two
hours of the estimated time of the killing. Based on this evidence, a rational jury could have
found beyond a reasonable doubt that Noguez killed Coronado.

 Evidence also was presented from which the jury could conclude that Noguez used
a deadly weapon in committing the murder. Noguez admits that the evidence establishes that
whoever killed Coronado did so with a deadly weapon. Officer Pena testified that Coronado's
ripped shirt and bra indicate that both were torn at the same time by a sharp instrument. Noguez
had access to knives and other sharp instruments at work. Having found that Noguez was the
murderer, the jury could reasonably infer that Noguez killed Coronado with a deadly weapon.

 When reviewing for factual sufficiency, we do not view the evidence in the light
most favorable to the verdict. Instead, we consider all of the evidence equally, including the
testimony of defense witnesses and the existence of alternative hypotheses. See Orona v. State,
836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no writ). We will set aside a verdict for factual
insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v.
State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, writ ref'd as untimely filed). The standard
of review is the same for direct and circumstantial evidence. See Geesa, 820 S.W.2d 154, 158-162.

 Considering all of the evidence, testimony, and hypotheses equally, Noguez's
conviction is not so contrary to the overwhelming weight of the evidence as to be wrong and
unjust. A rational jury could have doubted Noguez's testimony at trial because that testimony and
his earlier videotaped version of the events are often contradictory. Noguez testified that he was
at Coronado's apartment on the night of the murder between 6:00 to 7:30 p.m. and that he left
after arguing with her about a loan. However, Aguirre testified that he talked with Coronado on
the phone at 7:30 p.m. and she failed to mention Noguez, suggesting that Noguez's visit came
later. Noguez first admitted he tore Coronado's bra and shirt, but later changed his testimony,
claiming that he meant only that he unhooked her bra. Noguez testified that he abandoned his car
because he decided to drink heavily, yet he told his friend Tubb that he abandoned his car after
an argument with Coronado. Noguez testified that he learned Coronado was dead when he tried
to retrieve his car a month later, but in his earlier videotaped conversation with Officer Pedraza,
he had asked if Coronado was dead. We find the evidence to be factually sufficient and overrule
the points raised in issues one and two.


Sentencing

 Noguez asserts in his third issue that the trial judge erred in failing to consider the
full range of punishment at the sentencing phase. The sentencing-hearing record reflects that
Noguez did not say anything after being sentenced. His failure to object at the hearing waives his
right to appellate review of the sentencing. See Tex. R. App. P. 33.1. Since Noguez did not
preserve his right to review, we need only note that the punishment of life is within the
appropriate range for the offense of murder. See Tex. Penal Code Ann. §§ 19.02, 12.32 (West
1994). We overrule the complaint raised in the third issue.


CONCLUSION


 We conclude that the evidence was legally and factually sufficient to sustain
appellant's conviction of murder with a deadly weapon and that he waived the right to complain
about his sentence of imprisonment for life. The judgment of the trial court is affirmed. 



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: October 14, 1999

Do Not Publish



found beyond a reasonable doubt that Noguez killed Coronado.

 Evidence also wa