cr4-582.waters 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00582-CR







Vernon Edward Waters, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF DALLAS COUNTY, 283RD JUDICIAL DISTRICT


NO. F94-55638-NT, HONORABLE JACK HAMPTON, JUDGE PRESIDING







PER CURIAM


 Edward Waters was convicted in a bench trial of burglary of a habitation. (1) The
court sentenced him to twenty-five years' imprisonment. By his sole point of error, he challenges
the factual sufficiency of the evidence to support his conviction. We will affirm the judgment.



The Standard of Review


 When conducting a factual sufficiency review, we do not view the evidence in the
light most favorable to the verdict. Instead, we consider all the evidence equally, including the
testimony of defense witnesses and the existence of alternative hypotheses. Orona v. State, 836
S.W.2d 319, 322 (Tex. App.--Austin 1992, no pet.). We will set aside a verdict for factual
insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as
untimely filed).

 The indictment in this case alleged that Waters "did unlawfully, knowingly and
intentionally enter a habitation without the effective consent of LYNWOOD OWENS, the owner
thereof, with the intent to commit theft."



The Testimony


Lynwood Owens

 Owens said he awoke at around 2:00 a.m. on June 10, 1994 to hear people beating
on the walls and windows of his home. He jumped out of bed and went to the front room to call
911. While he was on the phone with the emergency operator, a man appeared in his house. The
intruder grabbed the phone out of his hands. The original intruder and a second man both hit
Owens in the face. The first intruder opened the front door to allow two others in. The men ran
around the interior of his house looking under mattresses and in drawers, but did not tell Owens
what they sought. One of the other men had a pistol in his hands. Just as the men resumed
pummelling Owens, the police appeared. Owens noticed nothing missing, but his back doors were
broken. Owens denied giving permission to any of the men to enter his house or take anything.

 On cross examination, Owens admitted that the police had found drugs in his
house. He said that people in the neighborhood throw things through his windows and hide things
in his walls by pulling the planks off the sides of the house. He admitted offering to drop the
charges in exchange for payment of the medical bills he incurred while being treated for his
injuries sustained during his beating.



Officer Russell Trask

 Trask was dispatched to Owens's house in response to his 911 call. As he
approached, a car sped away. Upon arriving, he saw the front door open and found Owens,
Waters, and a third man scuffling inside the house. He found the back door kicked off the hinges. 




Kevin Lamar Mathes

 Mathes, a friend of Waters, was charged as Waters's codefendant in this case. 
Mathes said he and Waters rode with a man named Terry to Owens's house. Waters and Mathes
did not know where they were going nor why, but went with Terry to the house upon his request. 
Terry knocked on Owens's door for about ten minutes before Owens answered. Owens let all
three men into the house; Mathes denied that anyone broke the door. Terry demanded money
from Owens, Owens got mad, and Terry got mad because Owens was not paying him money
owed for drugs. Terry went around the house looking for money or some collateral. Meanwhile,
though they had nothing against Owens, Mathes and Waters both hit Owens once. Terry,
however, continued to beat Owens. Waters and Mathes left the house and were standing outside
when the police arrived.



Discussion


 At the conclusion of evidence and argument, the court stated, 



None of the witnesses were the most credible people in the world, but the physical
evidence shows that the door was kicked in. I think that's enough to convince me
beyond a reasonable doubt that the entry was unlawful.

 

Mr. Waters has got blood on him, which puts him right in the middle of the
scuffle. There doesn't seem to be any question they went in there to steal money
or dope or both, under the mattress, wherever it might have been hidden, in the
dresser drawers, under the mattress, or wherever, so I'm going to find Mr. Waters
guilty of the charge.



 The court's apparent analysis does not shock the conscience. The hotly contested
issue was whether Owens allowed the men in. The broken screen door noted by Trask comports
with Owens's testimony and supports the court's choice to credit Owens's version over that of
Mathes. Such evidence indicates intentional entry without permission. That view of the entry
supports Owens's testimony that all the men came in to look for money or something to take. 



Conclusion


 We find the evidence factually sufficient to support conviction. We overrule point
one and affirm the judgment.


Before Chief Justice Carroll, Justices Aboussie and Jones; Justice Aboussie Concurring

Affirmed

Filed: August 23, 1995

Do Not Publish

1. The applicable statute is Penal Code, 63d Leg., R.S, ch. 399, sec. 1, § 30.02, 1973 Tex.
Gen. Laws 883, 926 (Tex. Penal Code Ann. § 30.02, since amended).